Leroy TAYLOR, Petitioner,

v.

William C. HOLMAN, Warden, Kilby
Prison, Respondent.

Civ. A. No. 2281-N.

United States District Court
M. D. Alabama, N. D.

Aug. 15, 1966.

Ralph D. Gaines, Jr., Talladega, Ala.,
for petitioner.

Richmond M. Flowers, Atty. Gen., and
David W. Clark, Asst. Atty. Gen., State
of Alabama, Montgomery, Ala., for re-
spondent.

ORDER

JOHNSON, Chief Judge.

The petitioner, Leroy Taylor, by order
of this Court made and entered in this
case on September 22, 1965, filed in
forma pauperis his application for a writ
of habeas corpus. The petitioner is rep-
resented by the Honorable Ralph D.
Gaines, Jr., Attorney at Law, Talladega,
Alabama, who was appointed in the State
court proceeding to represent the petition-
er and who, very commendably, conceives
it his duty to continue to represent the
petitioner in this Court upon this proceed-
ing.

Petitioner Taylor alleges that he is
presently incarcerated by the State of
Alabama at Kilby Prison, Montgomery,
Alabama, in violation of his constitutional
rights. His basic complaint is that his
constitutional rights were violated by the
State of Alabama acting through the Cir-
cuit Court of Talladega County, Alabama,

in State court case No. 6321 during the month of April 1963.[1] The petitioner is awaiting the execution of the sentence of death imposed by the Circuit Court of Talladega County, Alabama.

On the pretrial hearing of this cause, as reflected by the order of this Court made and entered herein on January 10, 1966, and after this Court had entered a formal order staying execution of the sentence until a plenary hearing could be conducted, it was stipulated and agreed that the sole issue to be inquired into and determined by this Court is: Whether the reception into evidence of admissions against interest and purported confessions obtained after arrest by State of Alabama authorities at a time when Taylor was not represented by counsel and when he had not been offered counsel, was a denial of Taylor's constitutional rights as guaranteed by the Sixth Amendment and the Fourteenth Amendment to the Constitution of the United States.

Upon this submission, and as to this issue, this Court finds that Taylor was taken into custody on April 6, 1963, custody being effected by Taylor's uncle escorting him to the Talladega City Police Department. At that time petitioner Taylor was a twenty-year old Negro, with a seventh grade education, who was engaged in pulpwood work "off and on"; he had no criminal record except two misdemeanor offenses for public drunkenness. Taylor was not represented by counsel at the time of his arrest; he knew no attorneys in the Talladega area, and knew nothing of courtroom proceedings. Prior to the time Taylor was taken to the Talladega City Police Department about dark on April 6, 1963, he had been assaulted by two brothers of the now deceased girl, who suspected that Taylor had killed their sister earlier that day. During the course

of this assault, Taylor had suffered a head wound, approximately one inch in length; however, he was in possession of his faculties, and the assault and consequential wound were not significant insofar as the issue in this case is concerned. After arriving at the police station, the uncle who had escorted him there returned to his home. Taylor was questioned at this time for approximately one hour by the Chief of Police of Talladega, Alabama. During this time he denied any knowledge of the crime then being investigated. At approximately 9:30 on the night of April 6, 1963, the circuit solicitor, William E. Hollingsworth, Jr., the state toxicologist, Dr. Robert B. Johnson, and Chief of Police Victor E. Dyson made plans to interrogate Taylor again, but prior to doing so, they sent Talladega police officers to ask both of Taylor's uncles, June Pointer and Andrew Pointer, to come to the police station and to be present during the interrogation. These uncles were Taylor's closest relatives in the Talladega area. After the uncles arrived, Taylor was interrogated in the presence of these relatives by these state officials for approximately one hour, the interrogation ending at approximately 11 o'clock on the night of April 6, 1963. During the course of this interrogation Taylor was physically examined and questioned by Dr. Robert B. Johnson. The physical examination resulted in no significant findings, and Taylor continued to deny any implication in the crime. Taylor was taken to his cell at approximately 11 o'clock on the night of April 6, 1963, and was not questioned again until the next day. On Sunday morning, April 7, 1963, at approximately 10 o'clock, two small boys, who had informed the authorities that they had seen Taylor escort the now deceased girl into the woods shortly

---

1. The indictment charging petitioner Taylor with unlawfully, and with malice aforethought, killing Cynthia Marie Hawkins by pushing and holding her face or head under water, whereby she was drowned, was returned to the Circuit Court by the Grand Jury on April 17, 1963. The arraignment was conducted on April 24, 1963, the trial of this cause was com-

menced on May 13, 1963, the verdict of guilty was rendered by the jury on May 16, 1963, and the defendant was sentenced upon the jury verdict of guilty to death by electrocution on May 17, 1963. The conviction and sentence was affirmed by the Supreme Court of Alabama on February 6, 1964, 160 So.2d 641.

before her body was found, were brought to the police station. Upon being confronted by these two small boys and upon the police officer's asking one of the boys to relate the events as they remembered them, Taylor interrupted and corrected the boy "as to how it happened." The boys were then taken from the Police Department, and Taylor gave a full confession of the crime to Talladega Chief of Police Dyson. The entire episode that occurred on Sunday morning, April 7, 1963, consumed approximately one and one-half hours. Taylor was not again questioned, his confession was offered into evidence on the trial of this case and, over the objection of his court-appointed counsel, was determined to be voluntary and was admitted for consideration of the jury.

■■ This Court is not called upon in this proceeding to pass on the guilt or innocence of Taylor of the crime for which he was convicted, nor is the Court required to determine whether the confession as made by Taylor is true or false. Rogers v. Richmond, 365 U.S. 534, 81 S.Ct. 735, 5 L.Ed.2d 760. The sole issue presented is whether the confession was voluntarily given by Taylor or was the result of overbearing by police authorities. Upon consideration of the trial record and transcript filed with the Clerk of this Court on October 22, 1965, and received into evidence by stipulation of counsel, and upon consideration of the oral evidence taken upon this plenary hearing, this Court concludes that the confession as made by Taylor to Chief of Police Dyson, Talladega, Alabama, City Police Department, and admitted into evidence over defendant's objection upon the trial of this case, was made freely and voluntarily, and not as a result of Taylor's having been overborne by any pressures exerted upon him by the Talladega City or State of Alabama authorities. It follows, therefore, that the confession as made by Taylor and as admitted into evidence by the state trial judge did not violate Taylor's constitutional rights.

■ The facts in this case are not even remotely comparable to the facts in Davis v. State of North Carolina, 1966, 384 U.S. 737, 86 S.Ct. 1761, 16 L.Ed.2d 895, where the interrogation of the defendant was repeatedly over a period of sixteen days and where the record did not indicate that the police had deprived him of any of his rights until after he had confessed. On the contrary, here the interrogation was over a very short period of time on Saturday night and a still shorter period of time on Sunday morning. The interrogation that was conducted on Saturday night, for the most part, was conducted in the presence of Taylor's nearest relatives, these relatives having been summoned to the Police Department by the authorities. During the course of the interrogation on Saturday night, Taylor's wounds that he had suffered as a result of his altercation with the brothers of the now deceased girl were ministered to by the authorities. He was treated courteously at all times during the interrogation on Saturday night and on Sunday morning. He was upon several occasions prior to being questioned on Saturday night and again on Sunday morning advised that he did not have to make any statement concerning the matter then being investigated and, furthermore, that anything that he might say could be used against him in a court of law. As the Supreme Court observed in Davis v. North Carolina, supra, in Miranda v. State of Arizona, 1966, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 and in Johnson, et al. v. State of New Jersey, 1966, 384 U.S. 719, 86 S.Ct. 1772, 16 L.Ed.2d 882, the cases of Escobedo v. State of Illinois, 378 U.S. 478, 84 S.Ct. 1758, 12 L.Ed.2d 977 (1964), and Miranda v. State of Arizona, supra, are not to be applied retroactively. This Court notes that *Escobedo* affects only those cases in which the trial began after June 22, 1964, the date of that decision, and that *Miranda* applies only to cases in which the trial began after the date of that decision, which was June 13, 1966. The conviction in this case was obtained and the trial completed long before either the *Escobedo* or the *Miranda* case was decided. The rulings in those cases are therefore inapplicable to the present proceeding. However, as the Supreme Court noted and

emphasized in Davis v. North Carolina, supra, the review of voluntariness in cases in which the trial was held prior to *Escobedo* and *Miranda* is not limited in any manner by those decisions.[2] As the Supreme Court noted in the *Davis* case:

> As we pointed out in *Johnson,* however, the non-retroactivity of the decision in *Miranda* does not affect the duty of courts to consider claims that a statement was taken in circumstances which violate the standards of voluntariness which had begun to evolve long prior to our decisions in *Miranda* and Escobedo v. State of Illinois, 378 U.S. 478, 84 S. Ct. 1758, 12 L.Ed.2d 977 (1964). * * The standard of voluntariness which has evolved in state cases under the Due Process Clause of the Fourteenth Amendment is the same general standard which applied in federal prosecutions—a standard grounded in the policies of the privilege against self-incrimination. Malloy v. Hogan, 378 U.S. 1, 6–8, 84 S.Ct. 1489, 1492–1493, 12 L.Ed.2d 653 (1964).

There is not even a suggestion in the evidence in this case that any officer while interrogating Taylor during the taking of his confession, or at any other time, used force or threats. On the contrary, the evidence reflects that the officers, on their own initiative, made certain that Taylor's closest relatives in the Talladega, Alabama, area were brought to the police station. His interrogation was not sustained and was not prolonged. The wounds that he had received as a result of an altercation prior to his being taken into custody were ministered to by the authorities.

■ Petitioner strenuously contends that the confession was elicited at a time when he was without counsel and had not been advised of his right to have counsel and that, for that reason alone, the admission of the confession into evidence by the state trial court deprived him of his constitutional rights. Such a contention, even assuming this was the case,[3] has no legal support. Crooker v. State of California, 357 U.S. 433, 78 S.Ct. 1287, 2 L.Ed.2d 1448 (1958). As the Supreme Court stated in Johnson v. State of New Jersey, supra, "a failure to warn accused persons of their rights, or the failure to grant them outside assistance" is simply a factor to be considered upon the question of voluntariness. In this connection, see also the July 18, 1966, opinion of the United States Court of Appeals for the Fifth Circuit in *Marion* v. *Harrist,* supra.

It therefore must be concluded that Taylor's confession in a constitutional sense was completely voluntary and was not in violation, as he contends in this case, of his rights as guaranteed by the Sixth and Fourteenth Amendments to the Constitution of the United States; nor was its use on the trial of the case in violation of the Due Process Clause of the Fourteenth Amendment to the Constitution of the United States.

In consideration of the foregoing, it is the order, judgment and decree of this Court that the petition for a writ of habeas corpus, filed herein by leave of this Court in forma pauperis by petitioner Taylor, be and the same is hereby denied. It is further ordered that petitioner Taylor's application for a writ of habeas corpus be and the same is hereby dismissed.

It is the further order, judgment and decree of this Court that petitioner Leroy Taylor be and he is hereby remanded to the custody of the State of Alabama.

---

2. See also Wainwright v. Padgett (5th Cir., July 8, 1966), 363 F.2d 822; Lyles v. Beto (5th Cir., July 13, 1966), 363 F.2d 503; Gamble v. Beto (5th Cir., July 14, 1966), 363 F.2d 831; and Marion

v. Harrist (5th Cir., July 18, 1966), 363 F.2d 139.

3. The evidence on this point is in conflict.